UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 21-111** |
| **ADRIAN DEXTER TALBOT, M.D.** | **SECTION: "H"(2)** |

## ORDER AND REASONS

Before the Court is the issue of Defendant Adrian Talbot, M.D.'s competency to stand trial. This Court previously found the Defendant competent to stand trial for the following reasons.

## BACKGROUND

On August 26, 2021, Defendant Adrian Talbot, M.D. was indicted on seven charges, including conspiracy to unlawfully distribute and dispense controlled substances and conspiracy to commit healthcare fraud in connection with his medical practice. Shortly after his initial appearance, Defendant filed a Motion for Competency Evaluation, arguing that he is incompetent to stand

1

trial due to progressive dementia.[1] This Court referred the Motion to the magistrate judge for hearing and determination.[2]

At request of the parties, the magistrate judge appointed Dr. Ted Bloch III and Dr. Michael Chafetz to examine Defendant and prepare a report on his competency. Magistrate Judge Currault held an evidentiary hearing on the Motion on March 21–22, 2022 at which Drs. Bloch and Chafetz testified. Judge Currault also heard testimony from Defendant's experts, Drs. Steven Croft and Vivian Begali. After considering the testimony of the four medical experts, Defendant's medical history and testing results, and her own personal observations, Magistrate Judge Currault found Defendant to be malingering and held that the government had satisfied its burden to show by a preponderance of the evidence that Defendant is competent to stand trial.[3] In reaching her opinion, she found most persuasive the opinions of Drs. Bloch and Chafetz who noted "exaggerated deficits in cognitive functioning based on the absence of any appreciable decline between 2016 and 2021, followed by a sharp decline from mid-2021 to late-2021" as well as clear indications of executive functioning higher than what would be expected of a demented person.[4]

Defendant then appealed Judge Currault's finding to this Court. On October 12, 2022, this Court found that Defendant had not identified any clear error in the magistrate judge's decision.[5] However, in light of the progressive nature of dementia, the Court set a continuation hearing before the district judge for November 8–9, 2023 to establish Defendant's competency at a point

---

[1] Doc. 8.
[2] Doc. 12.
[3] Doc. 64.
[4] Doc. 64 at 29.
[5] Doc. 93.

2

in time closer to trial.[6] Trial is set to begin on January 16, 2024. At the continuation hearing, Defendant presented the expert opinion of Dr. Vivian Begali, an expert in clinical neuropsychology and clinical psychology, and the testimony of his treating physician, Dr. James Nelson, and his wife, Gerry Broussard. The Government presented the expert opinions of Dr. Curtis Schreiber, an expert in neurology, and Dr. Robert Denney, an expert in clinical neuropsychology and forensic psychology. Considering the evidence presented at the continuation hearing, the evidence already in the record, and the applicable law, this Court found Defendant competent to stand trial for the following reasons.

## **LEGAL STANDARD**

The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial.[7] The standard for determining competency is whether, by a preponderance of the evidence, the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him."[8] In evaluating competency, the court considers "its own observations of the defendant's demeanor and behavior; medical testimony; and the observations of other individuals that have interacted with the defendant."[9] A district court

---

[6] Doc. 116.
[7] Dusky v. United States, 362 U.S. 402, 402 (1960).
[8] Cooper v. Oklahoma, 517 U.S. 348, 354 (1996) (internal quotations omitted).
[9] United States v. Porter, 907 F.3d 374, 380 (5th Cir. 2018) (citing United States v. Simpson, 645 F.3d 300, 306 (5th Cir. 2011)); *see also* United States v. Pervis, 837 F.3d 546, 554 (5th Cir. 2019).

"must assess a defendant's competence with specific reference to the gravity of the decisions the defendant faces."[10]

## LAW AND ANALYSIS

In her consideration of Defendant's competency, Judge Currault provided a detailed and exhaustive summary of the procedural and factual background of this case and Defendant's medical history. She also outlined the characteristics of dementia and the testing performed to reach a diagnosis thereof. This Court adopts those findings here and picks up the summary of Defendant's medical history where Judge Currault left off.

On November 7, 2022, Defendant sought treatment at Mt. Sinai Medical Center for a memory evaluation and to establish care. According to the medical history documented at his first appointment, Defendant reported having trouble retaining new information, finding words, repeating questions or stories, remembering recent events and names, and completing tasks. He denied having difficulty driving, dressing, eating, walking, or remembering events from many years ago. Dr. Ranjan Duara, a clinical neurologist at Mt. Sinai, ordered neurocognitive testing and an MRI of Defendant. Defendant scored a 10/30 on the MMSE and a 27/60 on the Brief Neurocognitive Evaluation. According to Dr. Duara, the MRI performed showed mild atrophy consistent with and suggestive of a neurodegenerative disorder. Dr. Duara noted an initial diagnosis of moderate dementia caused by an unspecified neurodegenerative disorder.

---

[10] United States v. Rodriguez, 2010 WL 3119369, at *2 (D. Or. Aug. 5, 2010) (citing Chavez v. United States, 656 F.2d 512, 518 (9th Cir. 1981)).

At a follow-up appointment at Mt. Sinai on May 9, 2023, Defendant's self-reporting of difficulties remained largely unchanged. However, Dr. Duara altered his initial diagnosis to include moderate dementia or factitious dementia. Although the reason for this change in diagnosis was not included in the medical records, it appears that Dr. Duara became aware of the charges against Defendant and the competency hearing in this matter.

In addition to his evaluation at Mt. Sinai, Defendant underwent a re-evaluation by Dr. Begali on September 9, 2023 and an evaluation performed by Drs. Schreiber and Denney on September 20 and 21, 2023 in preparation for the continuation competency hearing. Dr. Begali found that Defendant's condition had progressed since her initial evaluation in January 2022. She found him to be suffering from some form of dementia and incompetent to stand trial. On the other hand, although Drs. Schreiber and Denney admitted that Defendant does suffer from some level of cognitive decline, they did not find his impairment to be so severe as to render him incompetent to stand trial. Drs. Schreiber and Denney also found that Defendant is malingering the severity of his condition. Considering these opinions, the earlier opinions of Drs. Bloch, Chafetz, and Croft, Defendant's medical records, and the testimony of Ms. Broussard and Dr. Nelson, this Court found the following evidence compelling in reaching its decision that Defendant is competent to stand trial.

First, Drs. Denney and Schreiber both described Defendant's performance on the cognitive testing they administered as atypical of what would be expected from a patient suffering from dementia. For example, Defendant performed poorly when asked to recall a story but performed much better when asked to remember a list of things—a more difficult task. Dr.

5

Denney testified that there is no brain pathology that would explain Defendant's poor performance on story learning but not list learning. Defendant also scored in the high average range for executive functioning but was then unable to answer specific questions dealing with medical related issues. Dr. Denney found this inconsistency odd in light of Defendant's demonstrated intelligence and medical background. Finally, Defendant's performance on tests over the course of several years does not show a gradual decline in cognitive functioning as would be expected, but instead shows "rapid changes that do not make clinical sense."[11] These atypical test results, as well as Defendant's failure of some of the validity tests, suggested to Dr. Denney that Defendant was not putting forth his full effort on the testing and that the testing results do not accurately depict his true functioning.

      Second, both Drs. Denney and Schreiber reported that Defendant's memory deficit was most profound when discussing the charges at issue here. They reported that he exhibited a total confusion and bewilderment as to the fact that he has been charged with a federal crime that did not make sense in light of his ability to remember other things and his performance on the cognitive testing. The doctors agreed that there is no neurological process that would result in a total loss of memory only as to the charges against him. Dr. Denney explained that even a patient with mild to moderate dementia might forget pertinent details about his criminal indictment but "not the over-arching fact of his situation."[12] Again, these observations support a finding that Defendant did not have appropriate task engagement and was malingering.

---

[11] Denney Report at 46.
[12] Denney Report at 48.

Finally, even given these oddities, Dr. Denney found that Defendant performed fairly well on the testing when compared to men his age without his pre-morbid education level.[13] Indeed, even Dr. Begali's test results revealed only mildly impaired, low average, or average functioning in a number of relevant metrics. Dr. Denney opined that, assuming Defendant's test results are valid, they support a diagnosis of Mild Cognitive Impairment at most. Such a diagnosis would not result in cognitive functioning below the standard required for competency to stand trial.

In addition to the expert opinions of Drs. Denney and Schreiber, the Court finds compelling the fact that prior to 2022 none of Defendant's treating physicians performed the relevant testing to support a dementia diagnosis.[14] The initial indication of dementia in Defendant's medical records was in September 2016 by Dr. Anil Prasad, an employee of one of Defendant's clinics and a co-conspirator in the crimes charged here, and consisted mainly of Defendant's self-diagnosis. Thereafter, the references in Defendant's medical records of dementia were largely carried forward from prior providers and were not diagnoses supported by appropriate cognitive testing. As Judge Currault put it, "Dr Talbot's medical records do not demonstrate a progressive decline in the cognitive functions, even in the subjective reporting of symptoms, nor do the records contain valid objective testing supportive of a dementia diagnosis."[15] Further, when Defendant began treating at Mt. Sinai in 2022, Dr.

---

[13] Defendant has both a medical and law degree.
[14] The Court acknowledges that Dr. Nelson performed the COGNISTAT test on Defendant in July 2021 in order to diagnose dementia. However, as Judge Currault found, Defendant's significantly higher performance on the MMSE just three months prior calls the validity of his COGNISTAT result into question. *See* Doc. 64 at 13, 24.
[15] Doc 64 at 15.

Duara indicated that Defendant's dementia could be either moderate or factitious—that is, fabricated.

Next, the Court found portions of the testimony of Gerry Broussard to be suggestive of Defendant's competence. For example, Ms. Broussard, Defendant's wife and caregiver, testified that she left Defendant alone at their home in the Virgin Islands in July 2023 for three days to return to New Orleans and that her trip was unexpectedly extended to two weeks—suggesting that she felt his cognitive decline was not so severe that he could not care for himself over that period. She also testified that he is still physically active, walking several miles and doing hundreds of push-ups daily. This testimony was in contradiction to the observations of Dr. Begali who found Defendant to be "slumped" with slow ambulation, Dr. Schreiber who found Defendant's movements to be "slow and restricted," and Dr. Denney who described Defendant's initial appearance as "unsteady on his feet" and needing Ms. Broussard's arm for support. In this Court's view, this inconsistency is suggestive of malingering on the part of Defendant during his expert evaluations.

Finally, the Court does not find Defendant's MRI results to be conclusive of his incompetence. Indeed, there was no consensus amongst the doctors who considered the MRI results on what they revealed. Defendant's most recent MRI was performed at the direction of Mt. Sinai in 2022 and marked normal by the reviewing radiologist. Dr. Duara, on the other hand, reported observing atrophy—a sign of dementia. Dr. Nelson, Defendant's treating physician, looked at limited portions of the MRI images and agreed that both the 2021 and 2022 MRIs showed signs of atrophy. Dr. Schreiber, on the other hand,

8

found that Defendant's 2021 MRI showed a small number of white matter spots but did not appreciate any atrophy in either the 2021 or 2022 MRI scans. Dr. Denney explained that white matter changes in the brain can affect processing speeds and cause some mild cognitive impairment but are not severe enough to cause dementia. Accordingly, the results of Defendant's MRIs are equivocal and do not assist this Court in reaching its decision.

In light of the foregoing, this Court finds that to the extent that Defendant suffers from some cognitive impairment, it is not so severe as to render him incompetent to stand trial. Pursuant to the Supreme Court's decision in *Dusky v. United States*, Defendant need only have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," as well as rational and factual understanding of the proceedings against him.[16] "In itself, the mere presence of a mental disease or defect is not sufficient to render a defendant incompetent . . . . The disease or defect must be of sufficient magnitude to compromise defendant's mental capacities to the point that he functions below the level established in *Dusky*."[17] The Court also finds that the many inconsistencies and peculiarities in Defendant's test results suggest that he is malingering. This Court finds that the Government has carried its burden to show that Defendant is capable of functioning above the requisite level required for competency and that his cognitive impairment does not render him unable to understand the proceedings or assist his attorneys in his defense.

---

[16] 362 U.S. at 402.
[17] United States v. Liberatore, 856 F. Supp. 358, 360 (N.D. Ohio 1994).

## **CONCLUSION**

For the foregoing reasons, the Defendant is competent to stand trial.

New Orleans, Louisiana this 21st day of November, 2023.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**