## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                      **NO: 21-111**

**ADRIAN DEXTER TALBOT**                        **SECTION: "H"**

## ORDER AND REASONS

Before the Court is the issue of the amount of restitution owed by Defendant Adrian Talbot.

## BACKGROUND

After a nine-day jury trial, Defendant Adrian Dexter Talbot, M.D. was convicted on all seven charges, including one count of conspiracy to unlawfully distribute and dispense controlled substances in violation of 21 U.S.C. § 846; four counts of unlawful distribution and dispensing of controlled substances in violation of 21 U.S.C. § 841(a)(1); one count of maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1); and one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349.

The evidence at trial revealed that beginning in February 2015 and continuing through July 2018, Defendant, a medical doctor, prescribed

1

controlled substances outside the scope of professional practice and not for a legitimate medical purpose from his clinic, Medex Clinical Consultants P.L.L.C. ("Medex"), located in Slidell, Louisiana. While issuing prescriptions for controlled substances from Medex, Defendant also worked full-time at the Alexandria Veteran's Medical Center ("Alexandria VA") in Alexandria, Louisiana, approximately three-and-a-half hours away from Medex. Patients at Medex were seen by various nurse practitioners and handed pre-signed prescriptions for controlled substances by the office manager, Robbie Wiggins. Although Defendant only accepted cash from his patients for visits, the patients filled their prescriptions using insurance benefits, including Medicare, Medicaid, and Blue Cross Blue Shield of Louisiana. In November 2016, Defendant hired Dr. Anil Prasad to work at Medex. Prasad rarely visited with existing patients, pre-signed prescriptions for controlled substances, and did not have the authority to alter or change the prescriptions of Defendant's existing patients.

Now before the Court is the issue of the amount of restitution owed by Defendant pursuant to the Mandatory Victim Restitution Act.

## LEGAL STANDARD

The Mandatory Victim Restitution Act ("MVRA") applies in all sentencing proceedings for convictions of "an offense against property under this title, . . . including any offense committed by fraud or deceit."[1] The MVRA provides that restitution shall be awarded "to each victim in the full amount of each victim's losses as determined by the court and without consideration of

---

[1] 18 U.S.C. § 3663A(c)(1)(A)(ii).

the economic circumstances of the defendant."[2] The Fifth Circuit has held that "[t]he MVRA limits restitution to the actual loss directly and proximately caused by the defendant's offense of conviction" and "every dollar must be supported by record evidence."[3] The Government bears the burden of proving the amount of the victims' losses by a preponderance of the evidence.[4]

## LAW AND ANALYSIS

The Government has determined that Defendant owes the following amounts of restitution for the health care fraud scheme: $1,862,614.21 to Medicare; $2,480,991.23 to Medicaid; $638,000.00 to Blue Cross Blue Shield of Louisiana; and $147,534.00 to Humana. These amounts are the total payments made by these insurers for prescriptions written by Defendant or Prasad between February 2015 and July 2018. The Government has proven these amounts through exhibits introduced at trial or victim impact statements submitted by the insurers. Defendant puts forth two arguments against these amounts. First, he argues that these amounts exceed the actual restitution owed under the MVRA because they include all prescriptions written by Defendant or Prasad—regardless of whether they were for drugs that were medically necessary. He argues that the restitution amount should exclude any portion of payments covering legitimate prescriptions. Second, Defendant complains about the amount owed to Humana because Humana was not

---

[2] 18 U.S.C. § 3664(f)(1)(A).
[3] United States v. Beacham, 774 F.3d 267, 279 (5th Cir. 2014).
[4] 18 U.S.C. § 3664(e).

named as a victim in the Indictment. The Court will consider each argument in turn.

"The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government[,] and [t]he burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires."[5] In healthcare fraud cases, "[a]ctual loss for restitution purposes is offset by the amount of the legitimate services provided to the patients."[6] "To receive such an offset, however, a defendant must provide evidence suggesting that legitimate medical services were provided."[7]

In *United States v. King*, the Fifth Circuit considered a similar issue as presented here. There, the defendants were charged in a Medicare kickback scheme with referring residents of the group homes that they operated to a co-defendant, Dr. Bettega, for treatment that was unnecessary or not even provided.[8] The Government argued that the defendants owed restitution in the full amount that Medicare paid for the patients that were residents of the defendants' group homes.[9] The defendants argue that the restitution amount should be offset by the legitimate medical expenses billed to Medicare for those patients.[10] The Fifth Circuit held that the Government had proven by a preponderance of the evidence that "Dr. Bettega's entire operation was fraudulent, and that no deference should be afforded to the clinic's medical

---

[5] United States v. Cockerell, No. 24-10687, 2025 WL 1584422, at *8 (5th Cir. June 5, 2025) (internal quotation omitted).

[6] United States v. King, 93 F.4th 845, 851 (5th Cir. 2024).

[7] *Cockerell*, 2025 WL 1584422, at *8.

[8] *King*, 93 F.4th at 850.

[9] *Id.*

[10] *Id.*

4

records."[11] It also found that the defendants did not carry their burden to prove an offset, noting that they failed to show that any of the billed Medicare services were legitimate or even offer a rough estimate as to how much of Dr. Bettega's care could legitimately be offset.[12]

The same is true here. The Government showed at trial that patients at Defendant's Medex clinic were seen by nurse practitioners and handed prescriptions for controlled substances, pre-signed by Defendant or Prasad, while Defendant worked at another clinic hours away. Testimony at trial revealed that the examinations of patients were insufficient to establish the medical necessity for controlled substances and that Medex's medical records were insufficient to support any finding of medical necessity. Accordingly, the Government has shown by a preponderance of the evidence that the full amount paid by the victim insurers was directly and proximately caused by Defendant's offense of conviction.

To offset this amount, Defendant does not identify with any particularity what prescriptions or amounts were medically necessary or should not otherwise be included in the restitution amount. Instead, Defendant invites the Court to "carefully scrutinize" the Government's restitution figures to ensure that "each included claim" is fraudulent, not medically necessary, and occurred in the charged timeframe of the conspiracy.[13] The Court finds that the fraudulent scheme in this matter "is so pervasive that separating legitimate from fraudulent conduct is not reasonably practicable."[14] As the

---

[11] *Id.* at 852.
[12] *Id.* at 853.
[13] Doc. 332.
[14] United States v. Mazkouri, 945 F.3d 293, 304 (5th Cir. 2019).

Fifth Circuit has explained, Defendant has the "burden to show that particular amounts are legitimate. He did not do so."[15]

Next, Defendant complains about the amount of restitution the Government alleges he owes to Humana because he was not charged or convicted with defrauding Humana specifically. The law is clear that "where a fraudulent scheme is an element of the conviction, the court may award restitution for actions pursuant to that scheme."[16] "It is well established that, when a defendant is convicted of fraud by a jury verdict, the underlying scheme to defraud is defined, in large part, by the actions alleged in the charging document."[17] Count 7 alleges a comprehensive scheme of health care fraud, including the duration and methods used, and names victims similarly situated to Humana, such as "Blue Cross and other health care benefit programs."[18] The Fifth Circuit has held that restitution may be ordered for victims who are not named in the indictment provided that, as here, the scheme is precisely defined in the indictment.[19] Accordingly, this argument also fails. The Government has carried its burden to show the amount owed in restitution, and Defendant has not presented any viable defense thereto.

## **CONCLUSION**

For the foregoing reasons, the following restitution order is entered. An Amended Judgment reflecting the following shall issue separately.

---

[15] *Cockerell*, 2025 WL 1584422, at *9.
[16] United States v. Adams, 363 F.3d 363, 366 (5th Cir. 2004) (internal quotations omitted).
[17] *Id.*
[18] Doc. 1.
[19] United States v. Stouffer, 986 F.2d 916, 921 (5th Cir. 1993).

**IT IS ORDERED** that Defendant Adrian Talbot is ordered to pay restitution in the following amounts:

- $1,862,614.21 to Medicare;
- $2,480,991.23 to Medicaid;
- $638,000.00 to Blue Cross Blue Shield of Louisiana; and
- $147,534.00 to Humana

Restitution is due and payable immediately and shall begin while the Defendant is incarcerated.  Upon release, any unpaid balance shall be paid by Adrian Talbot at a rate of $100 per month. The payment is subject to increase or decrease, depending upon the defendant's ability to pay. The Court finds that Defendant does not have the ability to pay interest on the restitution. The Court will waive the interest requirement in this case.

Restitution payments shall be made to the Clerk, United States District Court, and are to be forwarded to the following address:

> U.S. CLERK'S OFFICE
> Attn: FINANCIAL SECTION
> 500 POYDRAS STREET
> ROOM C151
> NEW ORLEANS, LA  70130

The U.S. Bureau of Prisons, U.S. Probation Office and the U.S. Attorney's Office are responsible for the enforcement of this order.

7

New Orleans, Louisiana this 7th day of July, 2025.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**